1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

9

GREGORY CASTRO,                     )
                                    ) No. CV-04-320-CI
10          Plaintiff,              )
                                    ) ORDER GRANTING PLAINTIFF'S
11  v.                              ) MOTION FOR SUMMARY JUDGMENT
                                    ) AND DIRECTING AN IMMEDIATE
12  JO ANNE B. BARNHART,            ) AWARD OF BENEFITS
    Commissioner of Social          )
13  Security,                       )
                                    )
14          Defendant.              )
                                    )
15  _____  )

16      BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.

17  Rec. 17, 21), submitted for disposition without oral argument on

18  October 11, 2005.   Attorney Kenneth L. Isserlis represents

19  Plaintiff; Special Assistant United States Attorney Jeffrey H. Baird

20  represents Defendant.   The parties have consented to proceed before

21  a  magistrate  judge.    (Ct.  Rec.  14.)    After  reviewing  the

22  administrative record and the briefs filed by the parties, including

23  the  supplemental  briefs  filed  by  the  parties,  the  court  **GRANTS**

24  Plaintiff's Motion for Summary Judgment and remands for an immediate

25  award of benefits.

26      Plaintiff, 29-years-old at the time of the administrative

27  decision,  filed  an  application  for  Social  Security  disability

28  benefits on August 29, 2000, alleging onset as of March 27, 2000,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 1

due to hospitalization for psychiatric treatment. (Tr. at 17.) On May 9, 2002, he filed an application for Supplemental Security Income (SSI) benefits; the applications were consolidated. Plaintiff, a high school graduate, had relevant past work as a server assistant, sales associate, janitor, special event staffer, security guard and apprentice laborer. (Tr. at 17.) Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge R. J. Payne (ALJ). The ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff met the non-disability requirements for a period of disability and was insured for benefits through the date of his decision. Plaintiff had not engaged in substantial gainful activity and had severe mental disorders, but the impairments were not found to meet the Listings. The ALJ concluded Plaintiff met the qualifications for disability during his psychiatric hospitalization from March 27, 2000, to January 30, 2002, but because it was involuntary and court-ordered pursuant to pending criminal charges, no benefits were due and payable to Plaintiff. The ALJ also found after his release from the hospital, Plaintiff has been medically compliant, stable on medication, and without any delusions or paranoid thoughts. The ALJ concluded Plaintiff retained the residual capacity to perform his past work or make an adjustment to other work which exists in significant numbers in the national economy. (Tr. at 22.) Thus, the ALJ found there was no disability after January 30, 2002.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 2

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) relied on Plaintiff's expressed desire to work, (2) relied on the non-examining medical expert's unsupported opinion, (3) rejected Plaintiff's testimony, (4) rejected Dr. Lammers' opinion, (5) concluded Plaintiff could perform his past relevant work, and (6) relied on the Grids to conclude Plaintiff could perform other work which exists in significant numbers in the national economy. Finding issues one, two and four to be dispositive, the remaining are not addressed.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:[1]

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility,

---

[1] The parties have not raised the issue of whether this matter should be reviewed under the medical improvement standard following a period of disability. See 20 C.F.R. § 404.1593 and 1594. Thus, this court does not address that standard.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 3

resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. Undisputed Facts

It is undisputed Plaintiff was hospitalized following a plea of not guilty by reason of insanity to a charge of first-degree

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 4

robbery.  (Tr. at 404.)  That hospitalization continued for 22 months, followed by a conditional release to the community based on a mental health treatment plan and approval of the release by Whitman County Superior Court.  (Tr. at 225, 231.)  It also is undisputed the ALJ concluded Plaintiff was disabled during the period of his hospitalization, but ineligible to receive benefits because of his placement in a public institution.  (Tr. at 20.)  It is undisputed from the medical records Plaintiff complied with all phases of his treatment program and that medication resolved the symptoms of paranoid delusions.  (Tr. at 327.)  Finally, it is undisputed Plaintiff indicated to treatment providers, both during and after his hospitalization, that he desired to return to work and/or an educational program.  (Tr. at 220, 223.)  The only question is whether his mental and emotional health prevented his handling the stress associated with normal work activity.

2.  <u>Rejection of Opinion of Treating Physician</u>

    Plaintiff asserts the ALJ improperly rejected the opinion of the examining psychologist, Craig Lammers, Ph.D., without explanation, a report he alleges was consistent with the opinions of the psychiatrists who treated Plaintiff immediately before and after his release from the psychiatric hospital.  Dr. Lammers stated with respect to Plaintiff's employability:

> As noted above, Mr. Castro is presenting as rather symptom-free at this time.  While one could thus assume that he is capable of employment, in my opinion this would be extremely premature to request this of him.  He has very recently been discharged from an involuntary hospitalization that lasted for almost two years.  This would suggest that his symptoms were difficult to manage and that it took a rather prolonged period of time for him to obtain emotional stability.  While he is presently symptom-free of his psychotic disorder, I would describe him as rather fragile as he tries to make an adjustment

back into society following his hospitalization. Although symptom-free, it does not necessarily indicate that he is capable of coping with the demands that employment would place on him. His performance on the MMPI-2 would suggest that he is still experiencing periods of intense anxiety accompanied by very low confidence, social discomfort, and some isolation. His history would suggest that the symptoms have been somewhat present for him dating back to his high school years, and there is also a very definite pattern that his symptoms are exacerbated during periods of stress and tension. Thus it is most likely that his trying to seek and maintain employment would create significant stress for him, and thus increase the likelihood of a reoccurrence of his psychotic symptoms. Mr. Castro's focus during this time should be maintaining his emotional stability through stable housing, ongoing treatment, and frequent contact with his support system. Again, requiring more of him at this time would more likely than not lead to some reoccurrence of his above noted symptoms. If Mr. Castro were to remain symptom-free for a rather prolonged period of time, it would most likely increase a positive prognosis as to his abilities to find and maintain employment sometime in the future.

(Tr. at 356-357.) In an accompanying psychiatric review. Dr. Lammers indicated Plaintiff's condition met the Listings under 12.03, psychotic disorders. (Tr. at 361.)

Case law requires the opinions of examining physicians, when uncontroverted, be rejected only with "clear and convincing" evidence. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). If controverted, the reasons must be specific and supported by the record. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). There is no other examining or treating physician who contradicts Dr. Lammers' diagnosis or opinion. Thus, the ALJ must provide clear and convincing reasons for rejecting it.

The ALJ referred to Dr. Lammers' findings in his opinion (reference to Exhibit 15F, Tr. at 18). He also noted Plaintiff was living independently with a roommate and his daily activities consisted of working around his trailer park, walking, watching television and weekend dirt-biking and that although he felt he had

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 6

too much time on his hands, he did not feel capable of working. The
ALJ noted examination assessments since his release have confirmed
medication compliance, stability and symptom-free status. (Tr. at
21, 333-47.) The ALJ relied on Plaintiff's expressed representations
he intended to return to work and independent living, that he fully
understood his condition and its effect on his cognitive abilities,
and that, as long as he was medically compliant, he should remain
healthy with no exacerbation of delusional symptoms.  (Tr. at 21.)
Finally, the ALJ stated treatment records from Spokane Community
Mental Health (SCMH) providers demonstrated continued stability and
compliance with the medication protocol.

Plaintiff argues the ALJ improperly considered his desire to
return to work, citing *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.
1978), that held a willingness to engage in rehabilitative activity
is clearly not probative of a present ability to do so.   Dr.
Lammers' opinion and the providers at SCMH agreed Plaintiff,
although willing, was not able to handle the stress of full time
work upon his immediate release from hospitalization.  (Tr. at 333,
334, 350.)   Thus, although Plaintiff's statements offer some
support for his ability to work, they are not conclusive by
themselves, particularly when viewed against the medical treatment
record.   *Cox*, at 991.  Additionally, the fact Plaintiff was
responding to treatment does not provide clear and convincing
reasons for disregarding Dr. Lammers' opinion.  *Rodriguez v. Bowen*,
876 F.2d 759, 763 (9th Cir. 1989).  The ALJ must consider both the
objective and subjective findings of the treating / examining
physicians.  *Id*. at 762.  No examining or treating physician opined
Plaintiff was ready to return to work the day his hospitalization

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 7

1  ended.    Accordingly,  the  opinions  of  the  treating  and  examining
2  physician must be credited as true.    *Lester v. Chater*, 81 F.3d 821,
3  834 (9th Cir. 1995).

4  3.    <u>Opinion of Consulting Physician</u>

5      Plaintiff  contends  the  ALJ  improperly  relied  on  the  testimony
6  of  the  medical  expert,  Dr.  Bostwick.    Dr.  Bostwick  rejected  Dr.
7  Lammers'  findings  on  three  grounds:    First,  Dr.  Lammers  was  under  a
8  faulty  belief  Plaintiff's  criminal  charge  involved  burglary  rather
9  than  robbery.    (Tr.  at  415.)    Second,  his  22-month  stay  in  the
10 hospital  was  for  legal  reasons,  not  medical.    Third,  Dr.  Bostwick
11 noted  the  specific  one-seven  profile  demonstrated  by  the  MMPI
12 administered  by  Dr.  Lammers  did  not  reflect  paranoia,  but  rather  a
13 neurotic  profile  showing  obsessive  worry,  nervousness,  or  anxiety
14 and  that  the  description  of  extreme  limitations  was  not  reflected  in
15 the  medical  history.    (Tr.  at  415.)

16     The  opinion  of  a  non-examining  physician,  here  that  of  Dr.
17 Bostwick,  may  be  accepted  as  substantial  evidence  if  it  is  supported
18 by  other  evidence  in  the  record  and  is  consistent  with  it.  *Andrews
19 v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81
20 F.3d 821, 830-31 (9th Cir. 1995).    The  opinion  of  a  non-examining
21 physician  cannot  by  itself  constitute  substantial  evidence  that
22 justifies  the  rejection  of  the  opinion  of  either  an  examining
23 physician  or  a  treating  physician.    *Lester*, at 831, citing *Pitzer v.
24 Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).    Cases  have  upheld
25 rejection  of  an  examining  or  treating  physician  based  in  part  on  the
26 testimony  of  a  non-examining  medical  advisor;  but  those  opinions
27 have  also  included  reasons  to  reject  the  opinions  of  examining  and
28 treating  physicians  that  were  independent  of  the  non-examining

doctor's opinion.  *Lester*, at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.  *Andrews*, 53 F.3d at 1039.

Dr. Bostwick's rationale is not consistent with the medical record.  Even assuming Dr. Lammers was under a mistaken impression Plaintiff's criminal charge involved burglary rather than robbery, there is no medical rationale that would support a different diagnosis or residual findings because of the discrepancy in his misunderstanding of the criminal charge.

Although Plaintiff expressed a desire to obtain full time work after his release, his ability to cope with the stress associated with work was questioned by medical reports and findings.  During his second visit to Spokane Community Mental Health (SCMH) in May 2002, some four months after his release from hospitalization, without consideration of any stress resulting from job performance, Plaintiff expressed to SCMH providers anxiety and stress from dealing with ongoing events, *e.g.* evaluation for SSI, child support

issues, setting up goals, and finding a way to live his life so that
he could deal with the stress. (Tr. at 334.) Paxil was increased
and his global assessment of functioning was assessed at 51-60,
indicating a range of moderate impairment. DIAGNOSTIC AND STATISTICAL
MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995). The
increased anxiety also was noted by Dr. Lammers who conducted his
examination at the same time.

Dr. Bostwick's opinion that Plaintiff's hospitalization was due
to legal, rather than emotional issues, is contradicted first by the
ALJ's decision to find disability during that period. Second,
although it appears from the record, Plaintiff's hospitalization was
extended for an additional four months while he awaited court
approval of his community placement, the term of his hospitalization
was governed by RCW 10.77. (Tr. at 196.) There was no pre-set
"term" of hospitalization imposed by the court; Plaintiff was to be
hospitalized until he was medically capable of meeting the terms of
the conditional release. Plaintiff applied for conditional release
in June 2001. (Tr. at 221.) The court agreed to general conditions
of release on August 14, 2001. (Tr. at 231.) Clinic notes indicate
later treatment involving "redirection" following conflicts with
other patients. (Tr. at 273, 274.) Plaintiff was reported to be
stable and ready for conditional release on September 26, 2001, but
was awaiting a placement in the community and completion of the
proper notification required by the court. (Tr. at 277, 278, 282.)
From the end of September to Plaintiff's release in January, his
condition remained stable while he participated in hospital
programs. (Tr. at 277-292.) Thus, it appears his hospitalization was
extended only for an additional four months due to court

1  requirements.[2]  Nonetheless, the ALJ concluded Plaintiff remained
2  disabled until his release in January 2002.

3      Finally, Dr. Bostwick opined the MMPI results were not
4  indicative of paranoia, but excessive worry and anxiety.  Dr.
5  Lammers noted MMPI results indicated "periods of intense anxiety,
6  low confidence, social discomfort, and isolation."  (Tr. at 356.)
7  Thus, Dr. Lammers' opinion reflected a correct reading of the MMPI.
8  Additionally, the working diagnosis for medical providers at SCMH in
9  April and May 2002 included delusional disorder, persecutory type,
10  substance abuse in remission, anxiety disorder with panic attacks,
11  and social phobia.  (Tr. at 333, 334.)  Moreover, Plaintiff's
12  release to the community was pursuant to a recommended mental health
13  treatment plan that included further examination and treatment,
14  counseling, and continued medication.  Thus, Dr. Bostwick's opinion
15  was not consistent with the medical record or supported by it.
16  Accordingly,

17      **IT IS ORDERED**:

18      1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is
19  **GRANTED;** the matter is **REMANDED** for an immediate award of benefits,
20  based on an onset date of January 31, 2002.

21      2.  Defendant's Motion for Summary Judgment dismissal **(Ct.**

23      [2]Although not necessary to the court's opinion based on the
24  analysis of the first issue above, evidence submitted post-hearing
25  to the Appeals Council from the treating and examining physicians,
26  indicates continued disability upon release based on a need for
27  transition back to the community without the possibility of relapse.
28  (Tr. at 404-406, 400-403.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 11

1  **Rec. 21)** is **DENIED.**

2       3.    Any application for attorney fees shall be made by

3  separate motion.

4       4.    The District Court Executive is directed to file this

5  Order and provide a copy to counsel for Plaintiff and Defendant.

6  The file shall be **CLOSED** and judgment entered for Plaintiff.

7       DATED November 29, 2005.

8

9              S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 12